UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.                                        Case No. 8:23-cr-392-TPB-AEP

LUIS FARIS, et al.

      Defendants.
_____/

**ORDER DENYING LUIS FARIS'S AND CARLOS NARVAEZ'S
MOTION TO DISMISS INDICTMENT FOR LACK OF
JURISDICTION AND REQUEST FOR EVIDENTIARY HEARING**

This matter is before the Court on Defendant Luis Faris's "Motion to Dismiss Indictment for Lack of Jurisdiction and Request for Evidentiary Hearing," filed by counsel on April 8, 2024. (Doc. 98). On April 22, 2024, the United States of America filed a response in opposition. (Doc. 99). On April 24, 2024, Defendant Carlos Narvaez filed a motion seeking to join and adopt the motion to dismiss (Doc. 105). The Court grants the request to adopt the motion. No evidentiary hearing is required. Upon review of the motions, response, case file, and the record, the Court finds as follows:

This case arises out of an interdiction by a United States Coast Guard Law Enforcement Detachment ("USCG LEDET") of a go-fast vessel in the international waters of the Caribbean Sea, around 129 nautical miles west-southwest of Roseau, Dominican Republic. Defendant, along with seven other crewmembers, was onboard the go-fast vessel at the time of the interdiction.

On October 25, 2023, the USCG LEDET was deployed aboard the HMS

DAUNTLESS, a ship of the British Royal Navy, under the direction of the United States Coast Guard during a counter-narcotics patrol in the Caribbean Sea. After locating a vessel suspected of narcotics trafficking within the operation area, the DAUNTLESS deployed a helicopter and two small boats. The go-fast vessel did not contain any indicia of nationality and had several visual signals of contraband smuggling. The helicopter crew made several attempts to stop the vehicle so that the DAUNTLESS small boats, which contained additional members of the USCG LEDET, could complete a right of visit boarding to determine the nationality, if any, of the suspicious vessel. During the helicopter's pursuit of the go-fast vessel, the crewmembers jettisoned packages and some fuel barrels from the deck. The helicopter crew proceeded to employ warning shots in front of the go-fast vessel before employing disabling fire to the engines of the go-fast vessel.

    Once the go-fast vessel was stopped, one of the small boats from the DAUNTLESS arrived and proceeded to complete a right of visit boarding to determine the nationality, if any, of the vessel. The other small boat went to the location where the packages had been jettisoned, recovering eleven bales of contraband. The second boat then joined the first small boat and assisted in the right of visit boarding. During the boarding, Wilder Arcia made a verbal claim of Venezuelan nationality for the vessel, although there were no indicia of nationality on the vessel. None of the crewmembers presented registration documents to the boarding team, and the boarding team found no vessel documentation during the

boarding.[1]

Based on the verbal claim of Venezuelan nationality, pursuant to Article 17 of the U.N. Convention Against Illicit Traffic in Narcotic Drugs and Psychotropic Substances, the government of the United States requested that the government of Venezuela confirm or deny the vessel's registry. (Doc. 71-1). On October 26, 2023, the government of Venezuela replied that it could neither confirm or deny the vessel's registry or nationality, and it waived its primary right to exercise jurisdiction over the vessel, cargo, and crew.

Based on this information and the correspondence with the Venezuelan government, the United States Coast Guard determined that the vessel was without nationality and therefore subject to the jurisdiction of the United States under 46 U.S.C. § 70502(c)(1). The Coast Guard then completed the law enforcement boarding of the go-fast vessel, resulting in the recovery of 308 kilograms of contraband, which tested positive as cocaine.[2] The cocaine was seized, and the eight crewmembers, including Defendant, were detained by the Coast Guard for transportation to the United States.

Defendant, along with the other crewmembers, has been charged in a two-count indictment with conspiracy and possession with intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine, in violation of the Maritime Drug Law Enforcement Act ("MDLEA"), 46

---

[1] Defendant has now presented a Venezuelan registration, although it appears to have expired in 2012.
[2] Subsequent testing of the contraband by the Drug Enforcement Agency confirmed that the seized contraband was 274.8 kilograms of cocaine.

U.S.C. §§ 70501, *et seq*.

Defendant seeks dismissal of the indictment for lack of jurisdiction. Defendant challenges the jurisdictional reach of the MDLEA, arguing that it conflicts with international agreements including the U.N. Narcotics Resolution. Among other things, Defendant asserts that his vessel falls under the exclusive jurisdiction of Venezuela, and that the interception of his vessel lacked proper justification and was illegal. A great many cases of this nature have been filed in this Court going back several years. This is not the first time these arguments have been made.

The MDLEA makes it a crime for a person to possess with the intent to distribute a controlled substance while on board a covered vessel or conspiring to do so. 46 U.S.C. §§ 70503(a) and 70506(b). A "covered vessel" is defined as "a vessel subject to the jurisdiction of the United States," which includes a "vessel without nationality," such as "a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality." 46 U.S.C. §§ 70503(e)(1); 70502(c)(1)(A) and (d)(1)(C). "The response of a foreign nation to a claim of registry . . . may be made by radio, telephone, or similar oral or electronic means, and is proved conclusively by certification of the Secretary of State or the Secretary's designee." 46 U.S.C. § 70502(d)(2).

A vessel outside of the 12-mile territorial limit of a nation's territorial seas, even if the vessel is within an exclusive economic zone, is considered to be on the

high seas and within the United States' criminal jurisdiction. *United States v. McPhee*, 336 F.3d 1269, 1273 (11th Cir. 2003) (recognizing that MDLEA applies to vessels outside of the recognized 12-mile radius of a nation's territorial seas); *United States v. Rioseco*, 845 F.2d 299, 300 (11th Cir. 1988) (recognizing that vessel stopped by Coast Guard "within the Bahamas' exclusive economic zone" was "in an area of the high seas."); *see also United States v. Beyle*, 782 F.3d 159, 167 (4th Cir. 2015). In addition, "Congress, under the 'protective principle of international law, may assert extraterritorial jurisdiction over vessels in the high seas that are engaged in conduct that 'has a potentially adverse effect and is generally recognized as a crime by nations that have reasonably developed legal systems.'" *United States v. Tinoco*, 304 F.3d 1088, 1108 (11th Cir. 2002) (quoting *United States v. Gonzalez*, 776 F.2d 931, 939 (11th Cir. 1985)).

As previously noted, this is not the first time a jurisdictional argument such as this has been made. To be clear, the Eleventh Circuit has consistently rejected challenges to the MDLEA and "has held that the MDLEA is a valid exercise of Congress's power under the Felonies Clause." *United States v. Cabezas-Montano*, 949 F.3d 567, 586 (11th Cir. 2020); *see United States v. Macias*, 654 F. App'x 458, 460-61 (11th Cir. 2016). Consequently, under well-settled precedent, Congress possesses the authority to criminalize drug trafficking by foreign nationals, on the high seas, on vessels where the claimed nation of registry fails to corroborate the registry claim.

There is nothing new, different, or novel about the facts presented here.

Defendant's circumstances fit squarely within these confines – his vessel was interdicted outside of any nation's 12-mile territorial sea limit, and although a crewmember claimed Venezuelan nationality for the vessel, the government of Venezuela could neither confirm nor deny the claim of nationality. As such, the vessel is subject to the criminal jurisdiction of the United States. *See* (Docs. 71; 71-1).; *see, e.g.*, 46 U.S.C. § 70502(d)(1)(C) (providing that vessel is without nationality when master or individual in charge makes claim of registry but the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality); *United States v. Hernandez*, 864 F.3d 1292, 1297 (11th Cir. 2017) (holding that vessel "fit within the MDLEA's broad definition of a 'vessel without nationality' because a designee of the U.S. Secretary of State has certified, and thereby 'proved conclusively,' that Guatemala had not 'affirmatively and unequivocally' asserted that the *Cristiano Ronaldo* was of Guatemalan nationality").

Although Defendant attempts to argue that another sovereign – such as Venezuela, Dominica, or Great Britan – should instead exercise jurisdiction, or that the exercise of jurisdiction by the United States otherwise violates international law, his arguments lack merit, have been regularly rejected by higher courts, and do not divest the United States of jurisdiction.[3] *See* 46 U.S.C. § 70505; *Hernandez*, 864 F.3d at 1301-02 (holding that criminal defendant charged with violation of MDLEA does not have standing to raise claim of failure to comply with international law;

---

[3] The Court notes that the Government of Venezuela explicitly waived its primary right to exercise jurisdiction over the vessel, cargo, and crew. (Doc. 71-1).

such a claim "may be made only by a foreign nation" and "does not divest a court of jurisdiction"). Defendant's other arguments – such as the prosecution by the United States being a "sham prosecution" on behalf of Great Britain and the use of gunfire not complying with the requirements for initiating a "hot pursuit" in violation of international law – are likewise unavailing and do not warrant further comment.

Accordingly, Defendant Luis Faris's and Carlos Narvaez's motion to dismiss the indictment (Docs. 98 and 105) is hereby **DENIED**.

**DONE AND ORDERED** in Chambers, in Tampa, Florida, this 24th day of April, 2024.

_____
TOM BARBER
UNITED STATES DISTRICT JUDGE